UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

SCOTTY BOLDON, )
 )
    Plaintiff, )
 )
v. ) No.: 2:16-CV-225-TWP-MCLC
 )
CLAIBORNE COUNTY DETENTION )
CENTER, DR. ROSE, LARRY MARTIN, )
WAYNE LEE RHEA, and NURSE )
TERESA COFFEY, )
 )
    Defendants. )

## **MEMORANDUM and ORDER**

Acting pro se, Scotty Boldon, a prisoner housed in the Claiborne County Detention Center ("CCDC") in New Tazewell, Tennessee, brings this pro se civil rights complaint for monetary and declaratory relief under 42 U.S.C. § 1983 [Doc. 2]. Defendants are the facility itself; Dr. Rose, a physician who treats CCDC inmates; Larry Martin, Jail Administrator; Wayne Lee Rhea; and Teresa Coffey, a CCDC nurse [*Id.*]. Plaintiff claims that Defendant officers and medical care providers at the CCDC have denied him necessary emergency medical services and treatment, causing him to suffer emotional and mental stress and deteriorating health [*Id.* pp. 3-6].

Plaintiff has also filed a letter motion seeking appointed counsel [Doc. 6], in which he reiterates his prior contentions of medical mistreatment and contends that the mistreatment described in his complaint is continuing to occur.

### I.     STANDARDS OF REVIEW

In order to state a claim under 42 U.S.C. § 1983, Plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983

does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere.'). As with all prisoners' complaints, the Court must review Plaintiff's pleading to determine whether it states a claim entitling him to relief, is frivolous or malicious, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A. If the Court concludes that Plaintiff's claims fall within one of these categories, this suit must be dismissed. In performing this task, the Court bears in mind the rule that pro se pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Still, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means that the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court does not determine whether Plaintiff ultimately will prevail, but instead whether the facts permit it to infer "more than the mere possibility of misconduct,"—a type of "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The standard articulated in *Twombly* and *Iqbal* "governs dismissals for failure state a claim under [§§ 1915A(b)(1) and 1915(e)(2)(B)(ii)] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

The Court examines the claims offered by Plaintiff under these guidelines.

## II. DISCUSSION

### A. Plaintiff's Allegations

Plaintiff's pleading is redundant and seemingly contradictory in places, but the Court has interpreted the allegations therein as best as it can. Three claims and a sub-part of a fourth claim relate to Plaintiff's medical care at the CCDC and the remaining sup-part of the fourth claim concerns his living conditions in the holding cell [Doc. 2 pp. 3-6]. In the first claim, labeled as "Denial of Emergency Medical Services and Treatment," he maintains that unidentified guards told Jail Administrator Larry Martin and Wayne Lee Rhea not to give him medical attention [*Id.* at 3-4]. For nearly one month in May and June, in some unidentified year, Plaintiff was refused treatment when the bottom number on his blood pressure measurement would go over 110 [*Id.* at 4]. Plaintiff maintains that he, his wife, and either his or his wife's sister, who is an "Enidogist" and retired military physician, have documentation showing that the nurse, the doctor, and CCDC officials had notice of his blood pressure problems, but that they nonetheless "left [him] to die" [*Id.*].

In his second claim, Plaintiff alleges that he sometimes was refused medications and, other times, was given medications that he was not supposed to take [*Id.*]. (Plaintiff does not say that, to his detriment, he ingested medications he was not supposed to take.) Plaintiff further alleges that some unidentified individual refused to comply with orders from the Emergency Room to send him to his kidney and liver doctor, that his appointments were cancelled, and that he thereby was denied medical care [*Id.*].

In Plaintiff's third claim, he asserts that he was housed in a holding cell 24 hours a day that lacked a shower facility and, for days, that it lacked water [*Id.*]. Plaintiff also asserts that, on orders of the jail administrator and other officials, Dr. Rose and the nurse neglected his right to medical care [*Id.*].

The fourth claim reiterates that Plaintiff is being denied medical treatment and adds these allegations: My "treatment and medical services as well as mental request [sic] are and have been neglected denied and refused" and "[n]ow "they won't even check my blood pressure" [*Id.* at 5]. Plaintiff asserts that his kidney function has dropped from 39% to 30% and that he has had no response when his blood pressure rises to critical levels, going as high as 168, when normally that number is 130 to 150 on the bottom [*Id.*].

Plaintiff alleges that, after he exchanged correspondence with the American Civil Liberties Union, the Tennessee Department of Correction, and the United States Marshals Service, he was taken to the Emergency Room twice and that he was taken once to have a blood test performed to monitor his kidney function. However, Plaintiff maintains that this treatment was perfunctory and to "no avail" [*Id.*].

Plaintiff contends that, because of the lack of medical treatment, his health is deteriorating and that he has passed out twice, once hitting his head and once breaking a tooth [*Id.*]. Plaintiff charges that Defendants gave him too little or too much medication and again iterates that they ignored, neglected, and refused him medical attention and services [*Id.*].

Plaintiff's motion for appointed counsel [Doc. 6], filed some four months after his complaint, presents supplemental allegations involving his medical care. In the "allegations" part of the motion, Plaintiff asserts that his medical needs are still being ignored, that his medications are being given improperly, and that he has proof of negligence on the part of the jail administration, Dr. Rose, and the jail nurse, Teresa.

Finally, Plaintiff requests that he be awarded compensatory and punitive damages; that criminal proceedings be initiated against Defendants, if such charges are warranted under the

circumstances; and that Defendants admit that they were intentionally neglectful toward him [Doc. 2 at 7].

**B.    Governing Law**

It is well-settled law that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  An Eighth Amendment claim is composed of two parts: an objective component, which requires a plaintiff to show a "sufficiently serious" deprivation, and a subjective component, which requires him to show a sufficiently culpable state of mind —one of deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 and 842 (1994

Where a prisoner claims that he is being subjected to unconstitutional confinement conditions, the claimed conditions will be considered sufficiently serious if they deny a plaintiff "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Where a prisoner's claim involves the denial of medical care, the objective factor is satisfied by a condition that amounts to a serious medical need. *Farmer*, 511 U.S. at 834; *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A serious medical need is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004).  Yet, a prisoner whose claims are based on a theory of negligent medical treatment has not stated a claim under § 1983 because medical malpractice is not a constitutional violation. *Estelle*, 429 U.S. at 10.  Of course, the Eighth Amendment does not tolerate medical treatment that is "so woefully inadequate as to amount to no treatment at all." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843–44 (6th Cir. 2002).

A prison official acts with deliberate indifference so long as he is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually draws that inference. *Farmer*, 511 U.S. at 837. Deliberate indifference involves a state of mind comparable to criminal recklessness, *Id.*, at 839-40, or to a "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (2005) (quoting *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)).

### C.    Analysis

#### 1.    Non-Suable Defendant

The first Defendant named in the complaint is the Claiborne County Detention Center, a building that serves as a place of confinement for those in custody. However, this Defendant is not a suable entity under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 688-90 & n.55 (1978) (for purposes of a § 1983 action, a "person" includes individuals and "bodies politic and corporate"); *Marbry v. Corr. Med. Servs.*, 2000 WL 1720959, *2 (6th Cir. Nov. 6, 2000) ("[T]he Shelby County Jail is not an entity subject to suit under § 1983.") (citing *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991)); *Cage v. Kent Cnty. Corr. Facility*, 1997 WL 225647, *1 (6th Cir. May 1, 1997) ("The district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983."). Thus, any allegations asserted against the CCDC fail to state a claim for relief.

Accordingly, the Claiborne County Detention Center is **DISMISSED** as a Defendant and all claims against the CDCD are **DISMISSED** for failure to state a claim.

#### 2.    Officer Defendants

The complaint is not specific as to the capacity in which Defendants Martin and Rhea[1] are being sued, whether in their official capacities, individual capacities, or both. A suit brought against a public official will not be construed as seeking damages against that defendant in his individual capacity unless such a claim for individual liability is clearly and definitely set forth in the pleading. *See Pelfrey v. Chambers*, 43 F.3d 1034, 1038 (6th Cir. 1995). The designation of individual capacity need not be explicit—though, of course, that is preferable—so long as the pleadings and other filed documents provide sufficient notice to a defendant that he is being sued as an individual. *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir. 2001).

Here, Plaintiff has made no express designation of the capacity in which he is suing these two Defendants. Nor has he alleged anything in the pleading or in his letter motion to indicate that he is suing these Defendants in their individual capacities. Absent an indication—express or otherwise—that these Defendants are being sued in their individual capacities, the Court must assume that they are being sued only in their official capacities. *Id.* at 772.

Suits against officers in their official capacities under § 1983 are equated with suits against the governmental entity itself, *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992), and "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978); *see also Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (observing that an official-capacity suit proceeds as though a plaintiff had sued the governmental entity a defendant represents). Indeed, if damages are awarded in an official-capacity suit, a plaintiff must look to the governmental entity to satisfy such a judgment. *Kentucky v. Graham*, 473 U.S. 159, 166 (1995).

---

[1] The complaint identified Defendant Martin as the jail administrator [Doc. 2 at 3-4], but it did not identify the position occupied by Defendant Rhea. It is clear, however, from the assertions in the complaint, that Defendant Rhea is an officer in the jail.

7

The governmental entity Defendants represent is Claiborne County, Tennessee. To succeed in a suit against Claiborne County, Plaintiff must show that its policy, practice, or custom has caused him to sustain a constitutional injury. *Monell*, 436 U.S.at 691. In other words, to state a § 1983 claim against Claiborne County, Plaintiff must: (1) identify the policy, (2) connect the policy to Claiborne County itself, and (3) demonstrate that his injury was incurred because of the execution of that policy. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). While an inmate need not plead a theory of municipal liability with particularity, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993), still he must give fair notice of the claim to Defendants. *Twombly*, 550 U.S. at 555.

Plaintiff's complaint does not give fair notice to Defendants that they might be held liable in their official capacities. This is so because Plaintiff fails to identify a policy to deprive inmates of medical care or to subject them to medical mistreatment. He does not allege the existence of such a policy, nor does he connect any such policy to Claiborne County or show that the policy caused his injury. Therefore, Plaintiff has not stated a claim against Defendants Martin and Rhea in their official capacities, and they and all claims against them are **DISMISSED** from this suit.[2]

### 3. Relief Request

In addition to seeking "[f]inancial compensation" including "punitive damages, and an admission of intentional neglect of Plaintiff, he asks that criminal charges be brought in connection

---

[2] It is unclear whether Defendants Dr. Rose and Nurse Coffey are direct employees of the CCDC; whether they are employees of an entity that has a contract to provide medical care to CCDC inmates; or whether they are employed under some other type of arrangement to obtain health care providers for CCDC prisoners. Plaintiff must clarify the employment status of these Defendants in his amended complaint, which he will be invited to file later in this order. Depending on Dr. Rose's and Nurse Coffey's employment status, the *Monell* doctrine might apply to them as well.

with the claimed wrongful treatment he received at the CCDC, if such charges are appropriate [Doc. 2 at 7].

"[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). "[T]he law is clear that a private citizen has no Constitutional, statutory, or common law right to require a public official to investigate or prosecute a crime." *Woods v. Miamisburg City Schools*, 254 F.Supp.2d 868, 873-74 (S.D. Ohio 2003). Certainly, Plaintiff cannot use a § 1983 action to force the state to prosecute his medical care providers. *See Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996).

Because this request for relief fails to state a claim, it is **DENIED**.

### 4. Cell Conditions

Plaintiff alleges that he was housed in a holding cell for 24 hours a day, without a shower and, at times, without water. Plaintiff does not provide any information as to the duration of his stay in the holding cell, though the length of time that an inmate is exposed to a condition of confinement is relevant in determining whether the confinement meets constitutional standards. *See Hutto v. Finney*, 437 U.S. 683, 686-87 (1978) (commenting that "[a] filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months"). Moreover, because "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," *Rhodes*, 452 U.S. at 347, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).

To rise to the level of an Eighth Amendment claim, society must consider the risk complained of "to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (italics in original).

Plaintiff does not allege that he requested and thereafter was denied access to shower facilities or that he requested but was not provided water during the interruption of the water supply to his cell. Given Plaintiff's failure to supply allegations as to the length of time these conditions existed, the Court concludes that Plaintiff has failed to show that the conditions in the holding cell are such that society will not tolerate them. *Id.*

If, however the holding cell conditions are intolerable to society, the subjective component of an Eighth Amendment claim requires Plaintiff to show that a Defendant possessed a sufficiently culpable state of mind—one of deliberate indifference—in housing Plaintiff in a holding cell without shower facilities or a reliable water source. *Farmer*, 511 U.S. at 842. Notably, Plaintiff does not tie these claimed wrongful conditions to the remaining medical Defendants. Absent a connection between these two Defendants and the lack of shower facilities or the occasional lack of water in the cell, the Court cannot find that they possessed a state of mind amounting to deliberate indifference.

Furthermore, it is unlikely that the medical Defendants, a physician and a nurse, given their specialized positions and their obligation to provide medical care to CCDC inmates, also are responsible for providing decent living conditions to CCDC prisoners housed in the holding cell. *Cf. Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999) (explaining that defendants who allegedly instigated the plaintiff's firing were not liable because they "did not have the ability to terminate [the plaintiff] from his commissary position").

The Court finds that Plaintiff has failed to state a claim for a violation of the Eighth Amendment based on the conditions in the holding cell. This claim is **DISMISSED**.

    **5.**    **Medical Care**

There are several problems with Plaintiff's medical care claims against Defendants Dr. Rose and Nurse Coffey. First, Plaintiff seeks damages against them for what he characterizes as negligent medical conduct [Doc. 1 at 4-6, Doc. 6 at 1]. The Court includes in this category Plaintiff's contentions that his medications were not given to him properly and that he was given medications that he was not supposed to take. Allegations involving negligence or negligent medical treatment are not actionable theories of liability under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328-331 (1986) (finding that a "mere lack of due care" is not constitutionally actionable); *Estelle*, 429 U.S. at 106 (explaining that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner").

Plaintiff's contentions concerning negligence do not state recognizable § 1983 claims for relief. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) ("'[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim ... under the Eighth Amendment.'") (quoting *Estelle*, 429 U.S. at 106); *Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006) ("Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference."); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (finding that "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation  As the Sixth Circuit has explained, "[a]cting incompetently is not the same as acting wantonly." *Reed v. Speck*, 508 F. App'x 415, 420 (6th Cir. 2012).

The second problem is that Plaintiff acknowledges that medications are being dispensed to him (albeit negligently at times, so he claims); that he was taken twice to the Emergency Room for medical care; and that he had a blood test performed to check his kidney functioning. Thus,

by Plaintiff's own assertions, he has been rendered medical care, though possibly not the amount, the caliber, or the type of medical attention he would like to receive. Where a prisoner receives some medical care and the dispute is over its adequacy, no constitutional claim has been stated. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Plaintiff's expressions of dissatisfaction with the blood test and the Emergency Room treatment given to him are examples of just such a dispute.

That said, there are some troubling allegations in the complaint involving Plaintiff's medical care that may state a claim if they are amended. For example, Plaintiff claims that, between May 9th to June 6th, his blood pressure increased, with the bottom number rising up to 110, and that he was refused treatment several times for his blood pressure [Doc. 2 at 4]. Plaintiff further claims that, on some unspecified date, the bottom number shot up to 168, with that number typically being 130 to 150, and that now "they won't even check [his] blood pressure" [*Id.* at 4-5]. Plaintiff additionally claims that he has kidney and liver problems, that these problems likewise have not been treated, that orders were issued in the Emergency Room that he should see a doctor about his liver and kidneys, and that his appointments with the doctor were cancelled. Plaintiff also asserts his health is deteriorating "[b]ecause of this" and that, he passed out twice, sustaining injury.

Plaintiff satisfies the first element of a constitutional medical mistreatment claim by showing that a physician diagnosed him as having needing treatment for the three and possible four maladies alleged in the complaint or that his problems were such that even a layperson would recognize the necessity of a doctor's attention for those conditions. *See Blackmore*, 390 F.3d at 899). The Court appreciates that high or ever-increasing blood pressure could constitute a serious medical need. *See e.g. Shadrick v. Hopkins Cnty., Ky.*, 805 F.3d 724, 729, 737 (6th Cir. 2015)

(finding that inmate's high blood pressure demonstrated a "sufficiently serious" medical need, as a doctor had diagnosed it for treatment and as the inmate's need for medical care was so obvious that a layman would easily recognize the need for a doctor's attention). The liver and kidney problems that Plaintiff asserts he is having might also constitute serious medical needs. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (explaining that a pro se prisoner's claim that a doctor's removal of hepatitis C medication shortly after he commenced a one-year course of treatment was endangering his life, and that he still needed, but was being refused, treatment states an *Estelle* claim under § 1983); *Thomas v. Webb*, 39 F. App'x 255, at *1 (6th Cir. 2002) (recognizing that kidney stones are serious medical needs).

Here, however, Plaintiff has not supplied sufficient information to allow the Court to conclude that he has satisfied the first component of an *Estelle* claim. Plaintiff has not identified the conditions that have afflicted his liver or kidneys, has not indicated that a physician has diagnosed him as having diseases of those organs, and has not offered any allegations of fact to show that his symptoms are such that a layperson easily would recognize the need for immediate medical attention. Similarly, while Plaintiff has alleged that he passed out and injured himself "[b]ecause of this" [*Id.* at 5], he does not describe or identify what the "this" in that phrase is. And except for the date he supplied in connection with his blood pressure moving up to 110, i.e., "[f]rom the ninth of May till the 6th of June" [Doc. 2 at 4], he has failed to provide the date when each instance of alleged medical mistreatment occurred. Finally, he mentions in passing that he made a request for "mental" but offers no factual elaboration to flesh out this passing remark. recognize

To establish a claim for damages, Plaintiff must allege that each Defendant upon whom he seeks to impose liability, through that Defendant's own actions or inactions, has violated Plaintiff's

13

constitutional rights. *See, e.g., Terrance v. Northville Reg. Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) (noting that damage claims cannot be founded on conclusory, vague or general allegations, but only on factual allegations "that show the existence of the asserted constitutional rights violation recited in the complaint and what *each* defendant did to violate the asserted right") (citation omitted) (emphasis in original). To state a plausible claim against the remaining Defendants, "a plaintiff must 'allege facts' that, taken as true, are 'suggestive of illegal conduct.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (quoting *Twombly* 550 U.S. at 564, n. 8). Plaintiff has failed abysmally in this regard.

If Plaintiff provides further factual elaboration with respect to his claims involving his blood pressure, kidney, and liver problems, and, perhaps, a mental disorder, he might yet state colorable Eighth Amendment claims. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (explaining that "allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence"); *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) (finding that courts may allow a prisoner to amend even where the complaint is "subject to dismissal under the PLRA").

### III. CONCLUSION

For the reasons set forth herein, Plaintiff's claims as pled do not state Eighth Amendment claims, but the Court will allow Plaintiff to amend his complaint to correct all the various deficiencies noted herein. *See Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004) (observing that, "in a civil rights action . . . the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why").

Accordingly, unless within 30 days of the date on this Order, Plaintiff amends his claims to cure the specific cited failings, the Court will **DISMISS** this case for failure to state a claim for relief, without providing further notice to Plaintiff.

## IV. MOTION FOR APPOINTED COUNSEL

The last matter for consideration is Plaintiff's letter motion to appoint counsel to represent him in this case [Doc. 6]. Because Plaintiff has yet to state any viable §1983 claims, the Court finds that Plaintiff's motion for the appointment of counsel is premature.

Plaintiff's motion [*Id.*], thus, is **DENIED** at this time.

**SO ORDERED.**

          s/ Thomas W. Phillips
          SENIOR UNITED STATES DISTRICT JUDGE